**So Ordered.**

**Dated: October 8th, 2019**



**Frederick P. Corbit
Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re: | Case No. 18-01352-FPC7 |
| MARVIN L. OLSON, III, | Chapter 7 |
| Debtor. | |
| LINDSAY MARR MULLEN, | |
| Plaintiff, | Adversary No. 18-80028-FPC |
| v. | **FINDINGS OF FACT, CONCLUSION OF LAW, AND ORDER** |
| MARVIN L. OLSON, III, | |
| Defendant(s). | |

  THIS MATTER came before the Court on Lindsay Mullen's Complaint against debtor Marvin L. Olson, III filed August 8, 2019 (ECF No. 1). The trial in this adversary proceeding took place on September 26 and 27, 2019. The Court considered the testimony of Marvin Olson, III, John Russell, II, Johnny Russell, III, Brooke Ballard, Deputy Travis Pendell, Nichole Perry, Annette Olson, and Marvin "Mark" Olson, II ("Mark Olson"), considered all the admitted evidence and exhibits, and listened to the arguments of counsel. Based on the foregoing, the Court enters the following findings of fact, conclusions of law, and order:

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** – Page 1

# BACKGROUND

Late in the evening on June 28, 2016, Lindsay Mullen was seriously injured when a boat driven by Marvin Olson[1] crashed into a boat on which Ms. Mullen was a passenger. Subsequently, Ms. Mullen filed a civil action in Spokane County Superior Court against Mr. Olson, seeking damages for injuries.[2] On December 1, 2017, the Superior Court found that Mr. Olson was negligent while operating his boat and awarded Ms. Mullen a judgment totaling $353,229.72. However, the Superior Court judgment was silent as to whether Mr. Olson was intoxicated at the time of the crash.

On May 11, 2018, Mr. Olson filed a petition for Chapter 7 bankruptcy. (ECF No. 1) On August 2, 2018, Ms. Mullen commenced this adversary action alleging that her judgment was non-dischargeable under 11 U.S.C. § 523(a)(9) because her injuries resulted from Mr. Olson's operation of his boat while he was intoxicated. (Adv. Case 18-80028, ECF No. 1) Mr. Olson denied he was intoxicated at the time of the collision. (Adv. Case 18-80028, ECF No. 5) As a result, the dispositive issue before this court is whether Mr. Olson was intoxicated at the time of crash. Mr. Olson received a bankruptcy discharge on August 8, 2018. (ECF No. 21)

# FINDINGS OF FACT

1. At about 4:30 PM on June 28, 2016 Marvin Olson boated to Suncrest Park with his two young sons for an impromptu family gathering that included his father, Mark Olson, stepmother Annette Olson, stepsister Nichole Perry and several children. The group spent several hours together. Ms. Perry lives less than half a mile away from Suncrest Park.

---

[1] Debtor/Defendant Marvin Olson, III, is referred to herein as Marvin Olson or Mr. Olson. References to his father, Marvin Olson, II, will appear as "Mark Olson."
[2] Spokane County Superior Court Case No. 16-2-03200-6.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** – Page 2

2. At approximately 11:00 p.m., Mr. Olson and his 10-year-old son left Suncrest Park to boat to their campsite at Willow Bay. Mr. Olson's second son remained with Ms. Perry for an overnight.

3. At approximately 11:30 pm, Mr. Olson's boat crashed into a boat owned by John Russell, Jr. The crash caused major damage to the front hull and interior cabin area of Mr. Russell's boat. At the time of the collision, Ms. Mullen was between the upper deck and the lower cabin of Mr. Russell's boat.

4. Upon impact, Ms. Mullen was thrown backwards into the cabin, where she received numerous, serious injuries. Ms. Mullen was injured through no fault of her own.

5. Mr. Olson suffered a cut on his forehead when his head collided with his boat's windshield upon impact.

6. After the crash, Mr. Russell told Mr. Olson that he lived nearby, and together they boated to his house to assess Ms. Mullen's medical needs. At Mr. Russell's house, Mr. Russell woke up his then 15-year old son, Johnny, and told him they had been in a crash and he was taking Ms. Mullen to Providence Holy Family Hospital in Spokane.

7. Mr. Russell and Mr. Olson together lifted Ms. Mullen out of the boat and carried her to Mr. Russell's car.

8. Mr. Russell let Mr. Olson into his house, where Mr. Olson called Brooke Ballard, the mother of his sons, and requested a ride. Mr. Olson and his son stayed at the Russell home with Johnny Russell for about an hour until Ms. Ballard arrived.

9. Ms. Ballard picked up her son and Mr. Olson from the Russell's house and drove them to Sacred Heart Hospital in Spokane. At the hospital, Mr. Olson's head was bandaged, but no breathalyzer was administered.

10. After seeing Ms. Mullen's injuries, the Providence Hospital staff contacted the police. On the morning of June 29, 2016, Spokane County Sheriff Deputy Travis Pendell visited Ms. Mullen in the hospital.

11. Later that morning, Deputy Pendell questioned Ms. Ballard, who told the deputy that Mr. Olson had been at Suncrest Park all day, drinking mixed drinks with rum.

12. At trial, Annette Olson and Nichole Perry testified that on June 28, 2016, they were with Mr. Olson throughout the day, and he did not consume alcohol while in their presence, nor did Mr. Olson appear intoxicated or under the influence of alcohol.

13. Both Ms. Olson and Ms. Perry were credible witnesses.

14. Though Mr. Russell was repeatedly in close proximity to Mr. Olson the evening of the collision, Mr. Russell's testimony provided no evidence

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** – Page 4

from which the court could conclude that Mr. Olson was intoxicated or under the influence of alcohol.

15. Johnny Russell was inside the house with Mr. Olson for about an hour after the collision. Johnny Russell previously provided the Superior Court with a declaration stating that on the night of the collision, he observed Mr. Olson brace himself against the wall and sit down whenever possible. Johnny Russell also declared that Mr. Olson's pupils were dilated and that the blood from the wound on Mr. Olson's forehead appeared thin. However, during trial, Johnny Russell was confused and generally unable to recall the specific events of June 28, 2016.

16. At trial, Ms. Ballard presented conflicting testimony about her statement to Deputy Pendell, alternatively testifying that she had mistakenly "assumed" Mr. Olson was drinking mixed rum drinks, and later denying that she made the statement altogether. Ms. Ballard was ultimately unable to provide credible testimony about her recollection of her statement to Deputy Pendell.

17. Deputy Pendell testified that based on the facts he gathered during his investigation, he believed that Mr. Olson consumed alcohol on June 28, 2016, but he had no tangible evidence, such as breathalyzer results or a field sobriety test.

18. Mr. Olson denies that he drank alcohol on June 28, 2016, but admits that he had abused alcohol on other occasions. On February 17, 2017, Mr. Olson was previously convicted of Driving Under the Influence (DUI), RCW 46.61.502, and on July 19, 2017, he was convicted of reckless driving and driving with a suspended license arising from a DUI charge.

19. The sum of the evidence that supports the assertion that Mr. Olson was intoxicated at the time of the crash includes testimony from Deputy Pendell and Johnny Russell.

20. The sum of the evidence that supports the assertion that Mr. Olson was not intoxicated at the time of the collision includes testimony from Ms. Olson, Ms. Perry, and Mr. Olson himself.

21. Testimony from Mr. Russell and Ms. Ballard did not support or refute whether Mr. Olson was intoxicated. Mr. Russell was focused on getting Ms. Mullen medical attention and was unable to remember whether he saw any signs of intoxication in Mr. Olson's behavior that night.

22. In reaching its findings and conclusions, the Court relied on the testimony of Annette Olson, Ms. Perry, and Deputy Pendell, as well as Ms.

Mullen's exhibits 1, 2, 8, 9, 10, and 11, and Mr. Olson's exhibit 105.[3] Only admitted exhibits were considered by this court in making its findings.

23. Based on the evidence introduced at trial, the court is unable to find by a preponderance of evidence that at the time of the collision, Mr. Olson was intoxicated under 11 U.S.C. § 523(a)(9), as defined by RCW 79.60.040(2).

## CONCLUSIONS OF LAW

1. The standard of proof used when determining whether a claim is exempted from discharge under 11 U.S.C. 523(a) is preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

2. The preponderance of the evidence standard requires that the evidence establish the proposition at issue is more probably true than not true. *Mohr v. Grant*, 153 Wn.2d 812, 822 (2005).

3. Section 523(a)(9) of the Code provides:

> "A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from

---

[3] Exhibit 1 is Spokane Superior Court No.16-2-03200-6 Judgment for Plaintiff dated December 1, 2017; Exhibit 2 is Spokane County Sheriff Incident Report, Case No. 16-236089 dated July 20, 2017; Exhibit 8 is Spokane County District Court Case No. 720882677, Statement of Defendant on Plea of Guilty to Reckless Driving RCW 46.61.500 and Driving with a Suspended License, dated January 17, 2018; Exhibit 9 is Spokane County District Court Case No. 72882677 Judgment/Sentence/Commitment/Probation Order for Alcohol/Drug Related Offenses dated January 17, 2018; Exhibit 10 is Municipal Court for the City of Spokane Case No. 720357770, Statement of Defendant on Plea of Guilty to DUI RCW 46.61.502, dated January 11, 2018; Exhibit 11 is Municipal Court for the City of Spokane Case No. 720357770, Judgment and Sentencing Order, dated January 11, 2018; Exhibit 105 is Ronald Klein, Ph.D., Report of Psychological Evaulation of Lindsay Mullen dated April 26, 2017.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** – Page 7

any debt for death or personal injury caused by the debtor's operation of a motor vehicle, vessel, or aircraft if such operation was unlawful because the debtor was intoxicated from using alcohol, a drug, or another substance." 11. U.S.C. 523(a)(9).

4. In order to except a debt from discharge under Section 523(a)(9), "(1) there must be a debt for death or personal injury; (2) the death or personal injury must have been caused by debtor's unlawful operation of a motor vehicle; and (3) the operation of the motor vehicle must have been unlawful because the debtor was intoxicated pursuant to state law." *In re Denh Nhiet Chu*, 2008 WL 8444805, at 11 (B.A.P. 9th Cir. March 18, 2008) citing *United Servs. Auto. Assn v. Pair*, (*In re Pair*), 264 B.R. 680, 684 (Bankr. D. Idaho 2001).

5. The Washington state law related to driving a boat while intoxicated is RCW 79A.60.040(2), and it provides:

> (2) It is unlawful for a person to operate a vessel while under the influence of intoxicating liquor, marijuana, or any drug. A person is considered to be under the influence of intoxicating liquor, marijuana, or any drug if, within two hours of operating a vessel:
> …
>> (c) The person is under the influence of or affected by intoxicating liquor, marijuana, or any drug; or
>> (d) The person is under the combined influence of or affected by intoxicating liquor, marijuana, and any drug.

6. The circumstances surrounding the collision and some of the testimony indicates that Mr. Olson may have been intoxicated on the evening of

June 28, 2016, and the court recognizes that Mr. Olson has abused alcohol on other occasions; however, the credible testimony of Ms. Perry and Ms. Olson is the best evidence the court has about Mr. Olson's condition on June 28, 2016, and it supports the conclusion that Mr. Olson was not intoxicated.

7. Federal Rule of Evidence (FRE) 404 relates to the admissibility of character evidence in an adversary proceeding. FRE 404(b)(1) states:

> Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

8. Evidence is admissible under FRE 404(b) only if it is relevant. *Huddleston v. United States*, 485 U.S. 681, 689, (1988). Additionally, "the determination must be made whether the danger of undue prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other facts appropriate for making decision of this kind under Rule 403." Fed. R. Evid. 404 advisory committee's note to subdivision (b) (1972).

9. Mr. Olson objected to the admission of several exhibits offered by Ms. Mullen under FRE 404(b)(1). (Adv. Case 18-80028, ECF No. 42) Both parties filed motions to strike certain exhibits and pleadings (Adv. Case 18-80028, ECF Nos. 42, 45) and the Court denied both motions. (Adv. Case 18-80028, ECF No. 55).

10. At trial, counsel for Mr. Olson again objected to exhibits 3 through 11, and the Court took the objection under advisement. The court admits exhibits 8 through 11 and denies the admission of exhibits 3 through 7.[4]

11. Exhibits 8 and 9 both relate to Mr. Olson's reckless driving conviction on July 19, 2017, and were admitted for impeachment purposes, challenging Mr. Olson's credibility. Exhibits 10 and 11 relate to Mr. Olson's DUI conviction from February 17, 2017 and were admitted for impeachment purposes only.

12. Exhibits 3 through 7 were not admitted because the prejudicial nature of the exhibits outweighed the probative value, the exhibits lacked relevancy, and the exhibits improperly suggest Mr. Olson's propensity to drive under the influence of alcohol.

13. Based on the evidence presented at trial and the admitted exhibits, the Court concludes that Ms. Mullen has not established by a preponderance of the evidence that Mr. Olson was intoxicated as defined in 11 U.S.C. § 523(a)(9).

---

[4] Exhibits 3-7 all relate to Spokane County District Court Case No. 7Z0882677. Exhibit 3 is the Criminal Complaint dated July 21, 2017; Exhibit 4 is the Traffic Citation dated July 21, 2017; Exhibit 5 is an Order on Probable Cause, Setting Release Conditions, Court Date and/or Commitment dated July 21, 2017; Exhibit 6 is a Declaration to not Operate Any Motor Vehicle without an Ignition Interlock Device dated July 21, 2017; Exhibit 7 is an Order requiring pre-trial monitoring by ankle monitor dated September 13, 2017.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** – Page 10

## **ORDER**

Based on the above findings of fact and conclusions of law, Ms. Mullen's claim against Mr. Olson is not excepted from Mr. Olson's discharge.

///End of Order//